UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------x
WEST COAST 2014-7, LLC,

        Plaintiff,

    -against-

DONALD TOLSON a/k/a DONALD P. TOLSON; DLJ EQUITIES LLC;
BOARD OF DIRECTORS OF COVENTRY MANOR
TOWNHOUSES HOMEOWNERS ASSOCIATION; NEW YORK
STATE DEPARTMENT OF TAXATION AND FINANCE; THE
CLERK OF THE SUFFOLK COUNTY DISTRICT COURT; and
JOHN DOE "1" through "12" said names being fictitious, parties
intended being possible tenants or occupants of premises, and
corporations, other entities or persons who claim, or may claim, a lien
against the premises,

        Defendants.
--------------------------------------------------------------------------------x

**Memorandum of
Decision & Order**
15-cv-6306(ADS)(GRB)

<u>APPEARANCES:</u>

**The Margolin & Weinreb Law Group, LLP**
*Attorneys for the Plaintiff*
165 Eileen Way, Suite 101
Syosset, NY 11791
    By:   Alan H. Weinreb, Esq., Of Counsel

**Law Offices of Christopher Thompson**
*Attorneys for the Defendant DLJ Equities LLC*
33 Davidson Lane East
West Islip, NY 11795
        By:   Christopher H. Thompson, Esq., Of Counsel

**Taylor Eldridge, P.C.**
*Attorneys for the Defendant Board of Directors of Coventry Manor Townhouses Homeowners Association*
811 West Jericho Turnpike, Suite 201W
Smithtown, NY 11787
        By:   John D. Eldridge, Esq., Of Counsel

<u>NO APPEARANCES:</u>

**Donald Tolson a/k/a Donald P. Tolson**
*Defendant*

**New York State Department of Taxation and Finance**
*Defendant*

**Clerk of the Suffolk County District Court**
*Defendant*

**SPATT, District Judge:**

On November 4, 2015, the Plaintiff West Coast 2014-7, LLC commenced this diversity mortgage foreclosure action under Article 13 of the New York Real Property Actions and Proceedings Law ("RPAPL"), seeking to foreclose an alleged security interest in a parcel of real property owned by the Defendant DLJ Equities, LLC ("DLJ Equities"), located at 18 Amesworth Court in Middle Island, New York (the "Middle Island Residence").

On December 22, 2015, DLJ Equities, by counsel, filed an answer to the complaint, substantially denying the Plaintiff's allegations and asserting numerous affirmative defenses. Among these were defenses based on the Plaintiff's lack of standing and failure to comply with conditions precedent to bringing suit.

In addition to DLJ Equities, the complaint named as a Defendant the original borrower, namely, Donald Tolson, also known as Donald P. Tolson ("Tolson"), who, as described more fully below, remains the obligor under the relevant note and mortgage despite no longer owning or occupying the Middle Island Residence. The complaint also named the Board of Directors of Coventry Manor Townhouses Homeowners Association (the "Homeowners Association"); the New York State Department of Taxation and Finance ("NYDTF"); and the Clerk of the Suffolk County District Court ("District Court Clerk"), each of whom is alleged to be the holder of one or more junior liens against the Middle Island Residence. Finally, the complaint named twelve "John Doe" Defendants, whose identities were apparently unknown to the Plaintiff, but who are alleged to be individuals and entities with a potential interest in the Middle Island Residence, possessory or otherwise.

On January 13, 2016, after the above-named Defendants failed to answer or otherwise appear, the Clerk of the Court noted their default.

On January 19, 2016, counsel for the Homeowners Association filed a Notice of Appearance. However, since then, counsel has not answered the complaint; sought to vacate the Clerk's entry of default; or otherwise participated in this action.

On February 15, 2017 and March 29, 2017, respectively, the Plaintiff and DLJ Equities cross-moved for summary judgment under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56(a). The Plaintiff also moved under Fed. R. Civ. P. 55 for the entry of default judgments against the non-appearing Defendants.

For the reasons that follow, the Court grants the Plaintiff's motion for summary judgment, dismissing with prejudice the affirmative defenses of DLJ Equities; grants the Plaintiff's motion for default judgments extinguishing any potential interest that the non-appearing Defendants may have in the Middle Island Residence; and denies the cross-motion by DLJ Equities for summary judgment in its favor.

## I.    BACKGROUND

### A.    The Parties

The Plaintiff is a California corporation with a principal place of business in that state. As discussed more fully below, on January 21, 2015, by way of a written assignment, the Plaintiff allegedly acquired and took possession of the note and mortgage forming the basis of this case.

The Defendant DLJ Equities is a New York corporation with a principal place of business in Farmingdale. On October 3, 2014, DLJ Equities acquired the deed to the Middle Island Residence from an entity known as IPA Asset Management, LLC ("IPA"). On December 22, 2014, the deed of sale was duly recorded in the Office of the Suffolk County Clerk in liber D00012801, at page 288.

Previously, following a lawsuit between the Homeowners Association and Tolson to foreclose a separate lien on the Middle Island Residence, IPA acquired the property in a judicial sale. As noted above, the relevant Referee's Deed indicates that IPA, and therefore DLJ Equities, took the property subject to Tolson's continuing obligations under the Note and Mortgage.

The Homeowners Association is located in Great Neck and allegedly holds six judgment liens representing unpaid common charges against the Middle Island Residence.

The NYDTF, a government agency headquartered in Albany, allegedly holds a tax warrant filed against the Middle Island Residence.

The District Court Clerk, a government official with a principal place of business in Central Islip, is alleged to be a judgment creditor by virtue of a Suffolk County judgment filed against the Middle Island Residence.

It is alleged that any interest these Defendants have in and to the Middle Island Residence is subordinate to the Plaintiff's first-priority Mortgage lien.

Finally, two individuals sued in this action as John Doe "1" and John Doe "2" were later identified as tenants residing at the Middle Island Residence, namely, Crystal Hayes and David Felton. To date, neither of these individuals has appeared in this case.

**B.     The Note and Mortgage**

There is no factual dispute regarding the existence or validity of the underlying note and mortgage in this case.

All parties agree that on July 18, 2007, Tolson obtained a home loan from non-party Countrywide Bank, FSB ("Countrywide") in the principal sum of $114,000. In exchange, he executed a promissory note (the "Note") in favor of Countrywide in the same amount, which was secured by a mortgage (the "Mortgage") on the Middle Island Residence.

On August 27, 2007, the Note and Mortgage were duly recorded in the Office of the Suffolk County Clerk in liber M00021592, at page 605.

There also is no factual dispute regarding Tolson's default under the Note and Mortgage: apparently in violation of the terms of those instruments, Tolson failed to make his regularly-scheduled mortgage payment on July 1, 2012, and has not made any payments since that date.

C.      **The Chain of Assignments**

While not disputing the underlying Note and Mortgage, DLJ Equities disputes whether the Plaintiff has sufficiently shown itself to be the current owner and holder of those instruments, so as to confer standing to foreclose.

In support of its standing, the Plaintiff sets forth the following seemingly unbroken chain of assignments originating with the original lender.

On April 3, 2012, Countrywide, through its nominee Mortgage Electronic Registration Systems, Inc., apparently assigned the Mortgage to Bank of America, N.A., as successor by merger to BAC Home Loans Servicing LP, formerly known as Countrywide Home Loans Servicing LP ("Bank of America").

On April 18, 2012, a written Assignment of Mortgage to Bank of America purporting to transfer the Mortgage, "together with the note(s) and obligations therein described and the money due to become due thereon with interest and all rights accrued or to accrue under said security instrument," was duly recorded in the Suffolk County Clerk's office in liber M00022193, at page 600.

Thereafter, on January 11, 2013, Bank of America apparently assigned the Mortgage to Wells Fargo Bank, National Association, as successor to Wachovia Bank, National Association, formerly known as First Union National Bank ("Wells Fargo").

On March 18, 2013, a written Assignment of Mortgage to Wells Fargo, again purporting to transfer the Mortgage, "together with the note(s) and obligations therein described and the money due to become due thereon with interest and all rights accrued or to accrue under said security instrument," was duly recorded in the Suffolk County Clerk's office in liber M00022316, at page 880.

Finally, on January 21, 2015, Nationstar Mortgage, LLC, as attorney-in-fact for Wells Fargo, apparently assigned the Mortgage to the Plaintiff.

On May 5, 2015, a written Assignment of Mortgage to the Plaintiff West Coast 2014-7, LLC, purporting to transfer the Mortgage, "[t]ogether with the note(s) and obligations therein described

or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said document," was duly recorded in the Suffolk County Clerk's office in liber M00022589, at page 444.

The Plaintiff alleges, and its corporate Vice President of Operations Glenn Ohno asserts in a supporting affidavit, that the Plaintiff is in physical possession of the original Note and Mortgage and has been in such possession since prior to the commencement of this action.

### D.    The Notice of Default and Legal Proceedings

On February 6, 2015, pursuant paragraph 22 of the Mortgage, counsel for the Plaintiff sent a letter to Tolson entitled Notice of Default (the "30-Day Notice").

Consistent with the terms of the Mortgage, the 30-Day Notice: (1) identified the address of the Middle Island Residence and a loan number; (2) stated that the loan in question was $32,158.72 in arrears, representing unpaid monthly installments plus interest; (3) stated that, within 30 days, or by May 8, 2015, Tolson was required to pay that amount to bring his account up to date; (4) cautioned that his failure to do so (a) would result in acceleration of the loan, meaning the Plaintiff would call the full outstanding balance immediately due and payable, and (b) may also result in a lawsuit to foreclose the Mortgage; (5) stated that, in any foreclosure proceeding, Tolson would have the right to assert defenses of his choosing, including the non-existence of a default; and (6) stated that, after acceleration but before foreclosure, Tolson could have the lawsuit discontinued and the Mortgage reinstated by paying all sums due and owing.

The notice itself indicates that it was sent to Tolson by certified mail. An affidavit of mailing also indicates that on February 6, 2015, an additional copy was sent to Tolson by "depositing a true copy thereof in a post-paid wrapper, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York."

On November 4, 2015, approximately six months after the expiration of the deadline for payment identified in the 30-Day Notice, Tolson had neither responded nor cured his default. The Plaintiff then commenced this action.

An affidavit of service indicates that on December 1, 2015, the Plaintiff served DLJ Equities with process by serving on the New York Secretary of State copies of: (1) the summons; (2) the complaint; (3) a certificate of merit required under New York Civil Practice Law and Rules ("CPLR") § 3012-b; and (4) a pre-foreclosure notice entitled "Help for Homeowners in Foreclosure" required under RPAPL § 1303 (the "§ 1303 Notice").

A second affidavit of service indicates that on December 4, 2015, the Plaintiff sent an additional copy of the summons and § 1303 Notice to DLJ Equities by first-class mail.

On December 7, 2015, pursuant to RPAPL § 1303(3), copies of the § 1303 Notice were sent to the tenants of the Middle Island Residence, namely, Crystal Hayes and David Felton, by certified mail, return receipt requested, and first-class mail.

## II.   DISCUSSION

### A.   The Cross-Motions for Summary Judgment

#### 1.   The Standard of Review

Under Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "The Court 'must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party.'" *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998) (quoting *Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 26 (2d Cir. 1998)).

"Where, as here, cross-motions for summary judgment have been filed, the Court must consider each motion independently, and must apply the same standards, drawing all reasonable inferences 'against the party whose motion is under consideration.'" *Point 4 Data Corp. v. Tri-State*

*Surgical Supply & Equip., Ltd.*, No. 11-cv-726, 2013 U.S. Dist. LEXIS 109298, at *57 (E.D.N.Y. Aug. 2, 2013) (quoting *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 46 (2d Cir. 2007)).

### 2. The Relevant Burdens of Proof

" 'In a New York mortgage foreclosure action, a plaintiff makes a prima facie case – with summary judgment appropriate if nothing else is shown – where the foreclosing party produces documentary evidence establishing the three elements of a foreclosure claim: (1) a mortgage, (2) a note, and (3) proof of default on the note by the mortgagor.' " *Wells Fargo Bank, N.A. v. Ullah*, No. 13-cv-485, 2015 U.S. Dist. LEXIS 77175, at *10 (S.D.N.Y. June 15, 2015) (quoting *E. Sav. Bank, FSB v. Bright*, No. 11-cv-1721, 2012 U.S. Dist. LEXIS 93082, at *7-*8 (E.D.N.Y. July 5, 2012)).

Further, " '[w]here standing is raised as a defense by the defendant, the plaintiff is required to prove its standing before it may be determined whether the plaintiff is entitled to relief.' " *1077 Madison St., LLC v. Smith*, 670 F. App'x 745, 746 (2d Cir. 2016) (Summary Order) (quoting *U.S. Bank, N.A. v. Sharif*, 89 A.D.3d 723, 724, 933 N.Y.S.2d 293 (2d Dep't 2011)). In this regard, standing exists where the plaintiff " 'is both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action is commenced.' " *Id.* (quoting *U.S. Bank, N.A. v. Collymore*, 68 A.D.3d 752, 753, 890 N.Y.S.2d 578 (2d Dep't 2009)). " 'Either a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation.' " *Id.* (quoting *Collymore*, 68 A.D.3d at 754).

If "a plaintiff meets its prima facie burden and the defendant does not contest those facts, a presumptive right to collect the overdue amount exists that can only be overcome by showing a meritorious affirmative defense." *Bright*, 2012 U.S. Dist. LEXIS 93082, at *8. The burden then shifts to the homeowner to produce admissible evidence of such an affirmative defense. *See id.*

With these standards in mind, the Court turns to the parties' substantive contentions.

3. **The Plaintiff's Motion for Summary Judgment**

   a. **As to the Plaintiff's Prima Facie Case**

The elements of the Plaintiff's prima facie case are conceded. As noted above, DLJ Equities, the only appearing party, does not dispute the existence or validity of the Note and Mortgage, which were attached to the complaint and properly authenticated through the affidavit of Glenn Ohno, the Plaintiff's Vice President of Operations. *See* 56.1 Stmt. ¶ 2 (conceding the existence and validity of the Note and Mortgage).

Nor does DLJ Equities dispute Tolson's default under the Note and Mortgage by failing to make the required monthly payments after July 1, 2012. *See* 56.1 Stmt. ¶ 12 (conceding that Tolson breached his obligations under the Note and Mortgage by failing to make the required payments).

Therefore, the Plaintiff is presumptively entitled to summary judgment unless DLJ Equities can establish a meritorious affirmative defense to foreclosure.

   b. **As to the Affirmative Defenses of DLJ Equities**

DLJ Equities raises the following defenses to foreclosure:

(1) The Plaintiff failed to establish that it is the holder or assignee of the Note and Mortgage, and therefore lacks standing to foreclose;

(2) The Plaintiff failed to comply with RPAPL § 1304, which requires service of a 90-day pre-foreclosure notice as a condition precedent to commencing a legal action;

(3) The Plaintiff failed to establish compliance with paragraphs 15 and 22 of the Mortgage, which set forth certain requirements for serving the 30-Day Notice;

(4) The Plaintiff failed to comply with CPLR § 3408, which requires a mandatory settlement conference to be held in any residential foreclosure action;

(5) The Plaintiff failed to establish compliance with CPLR § 3012-b, which requires the service and filing of a Certificate of Merit with the complaint; and

(6) The Plaintiff failed to establish compliance with RPAPL § 1303, which requires service of a statutory notice on the tenants of the Middle Island Residence.

For the reasons that follow, the Court finds that none of these arguments presents a triable issue of fact sufficient to defeat summary judgment.

i.     **Standing**

As noted above, the Plaintiff can establish standing either by producing a valid written assignment of the Note or by demonstrating the physical delivery of the Note prior to the commencement of the foreclosure action.  *See 1077 Madison St., LLC*, 670 F. App'x at 746.  In this case, the Plaintiff has attempted both methods.

First, the Plaintiff submitted what appears to be an unbroken chain of written assignments connecting it to the originating lender.   DLJ Equities sets forth various arguments why these documents are insufficient to prove the Plaintiff's standing, including that they were acknowledged by out-of-state notaries and then proffered for use in this Court without accompanying certificates of conformity.  *See* N.Y. Real. Prop. L. § 299-a(1).

However, it is unnecessary to address these arguments because, even assuming that the written assignments are somehow defective, the Court finds that the Plaintiff established valid physical delivery of the Note prior to the date this action was commenced, which is sufficient to establish standing.

"Under New York's Uniform Commercial Code, the 'holder' is 'a person who is in possession of . . . an instrument . . . issued or indorsed to him.' "  *CIT Bank, N.A. v. Escobar*, No. 16-cv-3722, 2017 U.S. Dist. LEXIS 94093, at *17 (E.D.N.Y. June 16, 2017) (Report and Recommendation) (quoting N.Y. U.C.C. § 1-201[20]).

Thus, it is well-settled that standing exists "where the plaintiff possesses a note that, on its face or by allonge, contains an indorsement in blank or bears a special indorsement payable to the order of the plaintiff."  *1077 Madison St., LLC*, 670 F. App'x at 746-47 (internal quotation marks and citation omitted); *accord Eastern Sav. Bank, FSB v. Thompson*, 631 F. App'x 13, 16 (2d Cir. 2015) (Summary Order) (collecting cases for the proposition that "[w]hen a plaintiff demonstrates that upon commencement of the action it possessed a note, indorsed in blank, by way of physical delivery, New

York has consistently found the plaintiff to have sufficient interest in the enforcement of the debt to support standing").

Aptly summarizing the relevant authorities on this issue, the court in *Escobar*, *supra*, explained that:

> In addition to attaching a clear chain of assignment linking [the plaintiff] to the originator of the Mortgage, Plaintiff has also shown that prior to the commencement of this litigation [it] took physical possession of the original note and has maintained possession throughout the prosecution of this action. Under New York law, this fact alone is enough to show delivery of the Note and standing. *See OneWest Bank, N.A. v. Melina*, No. 14-CV-5290, 2015 U.S. Dist. LEXIS 115887, 2015 WL 5098635, at *4 (E.D.N.Y. Aug. 31, 2015), *aff'd*, 827 F.3d 214 (2d Cir. 2016) (citing *Kondaur Capital Corp. v. McCary*, 115 A.D.3d 649, 650, 981 N.Y.S.2d 547, 548 (2d Dep't 2014) ("The plaintiff also established that it had standing as the holder of the note and mortgage by submitting the written mortgage assignments and the affidavit of the plaintiff's president, which established that it had physical possession of the note prior to commencement of this action.") (citations omitted)). Additionally, the Court notes that as a matter of law, the Mortgage was transferred to Plaintiff at the same time as the Note. *See id.* (citing *Mortgage Elec. Registration Sys., Inc. v. Coakley*, 41 A.D.3d 674, 674, 838 N.Y.S.2d 622, 623 (2d Dep't 2007) (holding that the mortgage "passe[s] as an incident to the promissory note.") citations omitted)). Moreover, Plaintiff has demonstrated standing by annexing and affixing a copy of the Note to its Certificate of Merit which was filed at the commencement of the action. *See JPMorgan Chase Bank, Nat. Ass'n v. Weinberger*, 142 A.D.3d 643, 645, 37 N.Y.S.3d 2866, 288-89 (2d Dep't 2016) (holding that a *prima facie* showing of standing is established by attaching to the complaint a copy of the note). No additional proffer regarding the factual details of the delivery of the Note is necessary. *See id.*

*Escobar*, 2017 U.S. Dist. LEXIS at *16-*17 (internal record cites omitted); a*ccord Thompson*, 631 F. App'x at 15-16; *Gustavia Home, LLC v. Mejia*, No. 16-cv-4326, 2017 U.S. Dist. LEXIS 104574, at *7-*8 (E.D.N.Y. July 5, 2017); *Eastern Sav. Bank, FSB v. Whyte*, No. 13-cv-6111, 2016 U.S. Dist. LEXIS 6880, at *7-*9 (E.D.N.Y. Jan. 20, 2016).

In this case, the Plaintiff has produced a copy of the signed Note, indorsed in blank, the existence and validity of which are uncontested.

Further, through the sworn affidavit of its Vice President of Operations, the Plaintiff has established that it took physical possession of the Note prior to the time this action was commenced and has continuously maintained physical possession throughout the litigation. That the Plaintiff possessed the Note at all relevant times is corroborated by the fact that it was attached to the initial

complaint and contained in the Certificate of Merit, both of which were served on all parties at the outset of the litigation. Applying the standards outlined above, the Court finds that no more is required to establish standing, and DLJ Equities has presented no evidence to raise a genuine issue of material fact in this regard.

To the extent that DLJ Equities suggests the Plaintiff was required to establish proof of the specific date on which it came into physical possession of the Note, its argument is contradicted by clear Second Circuit precedent. *See OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 222-23 (2d Cir. 2016) (rejecting the argument that the plaintiff's "failure 'to provide the exact date the Note was transferred, or any details at all regarding the delivery of the Note prior to commencement of a foreclosure action' [wa]s fatal to its claim for summary judgment"; holding that the plaintiff "had no obligation to provide details pertaining to the transfer or delivery of [the underlying] Note in order to prove its standing to foreclose on the associated mortgage").

Accordingly, the Court finds that DLJ Equities has not established an affirmative defense based on lack of standing sufficient to defeat summary judgment.

### ii.     RPAPL § 1304

DLJ Equities further argues that the Plaintiff failed to comply with the provisions of RPAPL § 1304, which requires service of a 90-day pre-foreclosure notice as a condition precedent to commencing a legal action.

The RPAPL defines a "home loan" by reference to three elements: (1) the borrower must be a natural person; (2) the debt must be primarily for personal, family, or household purposes; and (3) the loan must be secured by a mortgage on a dwelling "which is or will be occupied by the borrower as the borrower's principal dwelling." RPAPL § 1304(6)(a).

As to any such "home loan," § 1304 requires a lender, assignee, or mortgage loan servicer "to transmit a notice to the borrower at least 90 days prior to commencing a legal action for foreclosure." *Gustavia Home, LLC v. Rutty*, No. 16-cv-2823, 2017 U.S. Dist. LEXIS 9661, at *7 (E.D.N.Y. Jan. 23, 2017).

This provision forms an integral part of the Home Equity Theft Protection Act ("HETPA"), which was enacted "to afford greater protections to homeowners confronted with foreclosure." *First Natl. Bank of Chicago v. Silver*, 73 A.D3d 162, 165, 899 N.Y.S.2d 256 (2d Dep't 2010) (citing Senator Introducer Mem in Support, Bill Jacket, L 2006, ch 308, at 7-9)).

Thus, as DLJ Equities correctly notes, compliance with § 1304 is a statutory condition precedent to commencing a foreclosure proceeding. *See Rutty*, 2017 U.S. Dist. LEXIS 9661, at *7 (citations omitted).

In this case, there does not appear to be any material dispute that Tolson's mortgage loan constitutes a "home loan" within the meaning of the statute. As to the definitional requirement that he occupy the Middle Island Residence as his principal dwelling, paragraph 6 of the Mortgage states, in relevant part that: "I [Tolson] will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year." There is no evidence in the record to suggest that Tolson failed to comply with this portion of his Mortgage agreement.

There also does not appear to be any material dispute that, at some point in time, Tolson vacated the Middle Island Residence, and does not presently live there. Indeed, as noted above, the evidence shows that a separate lien against the property was foreclosed, and the Middle Island Residence was sold to DLJ Equities' predecessor-in-interest in September 2014.

However, the parties *do* dispute the legal effect of these facts, namely, whether the Plaintiff's obligation to serve Tolson with a 90-day pre-foreclosure notice under RPAPL § 1304 is vitiated by the fact that he no longer occupies the Middle Island Residence as his principal dwelling.

The Plaintiff answers this question in the affirmative, arguing that the notice provisions of § 1304 apply only to mortgagors whose primary residence is the mortgaged property. Thus, the

Plaintiff concedes that it did not serve Tolson with the 90-day pre-foreclosure notice required under the statute, but claims that it was excused from doing so based on Tolson's failure to reside at the mortgaged premises. The Court agrees.

This is a somewhat unusual case, in that the borrower is not also the homeowner. Thus, if the overarching purpose of HETPA is to afford greater protection to homeowners confronted with foreclosure, then serving Tolson – who, despite remaining liable on the Note and Mortgage, neither occupies nor owns the Middle Island Residence – with a pre-foreclosure notice would do little to effectuate the statute's aim.

At least one district court in this District has reached a similar conclusion. *See Rutty*, 2017 U.S. Dist. LEXIS 9661, at *7 (holding that, since the mortgaged premises was not the borrower's primary residence, "§ 1304's notice requirement is not applicable to [him]"); *Gustavia Home, LLC v. Rice*, No. 16-cv-2353, 2016 U.S. Dist. LEXIS 157212, at *7 (E.D.N.Y. Nov. 14, 2016) (same).

DLJ Equities takes the opposite approach, contending that § 1304 applies regardless of whether Tolson still resides at the mortgaged premises.

In this regard, DLJ Equities argues that the statutory text of § 1304 contemplates a situation, like this one, where the borrower no longer occupies the mortgaged premises as his primary residence. Namely, subsection (2) of § 1304 states that the 90-day notice "shall be sent . . . to the last known address of the borrower, and to the residence that is the subject of the mortgage." According to DLJ Equities, this language presupposes a situation where, as here, the borrower's address is different than the address of the mortgaged property. The Court disagrees.

Although a prior version of this provision did explicitly state that the 90-day notice "shall be sent . . . to the last known address of the borrower, and *if different* to the residence that is the subject of the mortgage," contrary to DLJ Equities' current contention, the words "if different" were specifically deleted as part of a 2016 amendment.

Further, this interpretation is apparently inconsistent with the broader policy goals of the statute. As noted above, in order to provide extra protection to *homeowners* confronted with foreclosure, § 1304 requires service of a 90-day pre-foreclosure notice on *the borrower*. Thus, contrary to DLJ Equities' position, the statute appears to specifically contemplate that the borrower and the homeowner are one-in-the-same. At a minimum, the statute contemplates a situation where, unlike here, the borrower occupies the mortgaged premises, or otherwise stands to be adversely affected by a foreclosure.

In this case, it is difficult to imagine which of the statute's purposes would have been served by sending a 90-day pre-foreclosure notice to Tolson, who already relinquished ownership of the Middle Island Residence in a judicial sale more than two years ago, and does not currently live there. Indeed, refuting any inference that Tolson stands to be adversely affected by the current proceedings is the fact that he was duly served with the relevant filings in this case, and failed to appear or otherwise defend against the Plaintiff's attempt to foreclose. Nothing in the submissions made by DLJ Equities compels a different conclusion.

Therefore, given Tolson's apparent lack of a possessory interest in the Middle Island Residence, the Court finds that the Plaintiff was not required to serve him with a 90-day pre-foreclosure notice as a condition precedent to bringing suit. Accordingly, in the Court's view, DLJ Equities has not established an affirmative defense based on the Plaintiff's failure to comply with RPAPL § 1304 sufficient to defeat summary judgment.

### iii. Contractual Notice Provisions

DLJ Equities further argues that the Plaintiff failed to comply with paragraphs 15 and 22 of the Mortgage, which set forth certain requirements for serving the 30-Day Notice. Namely, the Mortgage states that the 30-Day Notice "is considered given to me [Tolson] when mailed by first-class mail or when actually delivered to my notice address if sent by other means."

Here, DLJ Equities contends that the Plaintiff failed to establish its compliance with this provision because: (1) the relevant affidavit of mailing does not state that a copy of the 30-Day Notice was sent to Tolson by "first class mail"; and (2) there is no proof that the copy sent by certified mail was actually delivered.

However, as noted above, the relevant affidavit of mailing states that the 30-Day Notice was sent by "depositing a true copy thereof in a post-paid wrapper, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York." In the Court's view, this affidavit establishes service by first-class mail, as a matter of law.

DLJ Equities' conclusory argument that the omission of the phrase "first-class mail" from the affidavit somehow rebuts the presumption of regularity arising from the Plaintiff's proof, or otherwise raises a material question of fact as to the sufficiency of the mailing is insufficient to defeat summary judgment. *See Ullah*, 2015 U.S. Dist. LEXIS 77175, at *23-*25 (noting the "longstanding doctrine of presumption of regularity: a letter or notice that is mailed is presumed to be received by the addressee"); *Escobar v. City of New York*, No. 05-cv-3030, 2010 U.S. Dist. LEXIS 15142, at *12 (E.D.N.Y. Feb. 19, 2010) ("Under New York law, an affidavit of service is prima facie evidence of the method of service and creates the presumption that the defendant was properly served").

Nor does the Court find any merit in DLJ Equities' contention that the 30-Day Notice was rendered invalid simply because it was sent by the Plaintiff's attorneys and not the Plaintiff itself. On the contrary, the Court discerns no provision in the Note, the Mortgage, or any other source that would support such a requirement.

Accordingly, the Court finds that DLJ Equities has not established an affirmative defense based on the Plaintiff's failure to comply with a contractual condition precedent sufficient to defeat summary judgment.

### iv.     CPLR § 3408

DLJ Equities further argues that the Plaintiff failed to comply with the provisions of CPLR § 3408, which requires that a mandatory settlement conference be held in any residential foreclosure action.

However, this Court and others have repeatedly held that § 3408 is inapplicable to foreclosure actions in federal court.  *See CIT Bank v. O'Sullivan*, No. 14-cv-5966, 2016 U.S. Dist. LEXIS 61787, at *30 (E.D.N.Y. May 10, 2016) (Spatt, J.) (observing that " '[c]ourts in this Circuit have held that, in this context, [Fed. R. Civ. P.] 16 provides a sufficient alternative mechanism for facilitating settlement, rendering CPLR § 3408's mandatory settlement conference requirement inapplicable' ") (quoting *E. Sav. Bank, FSB v. Aufiero*, No. 14-cv-0256, 2016 U.S. Dist. LEXIS 32470, at *26 (E.D.N.Y. Mar. 14, 2016)); *see also Rice*, 2016 U.S. Dist. LEXIS 157212, at *14 (holding that CPLR § 3408 "is a procedural mechanism of state law and therefore is inapplicable in federal court"); *One West Best, N.A. v. Marchassalla*, No. 15-cv-394, 2016 U.S. Dist. LEXIS 139880, at *11 (E.D.N.Y. Sept. 30, 2016) (rejecting a substantially similar argument on the ground that "CPLR § 3408 is displaced by [Fed. R. Civ. P.] 16 and thus does not apply to foreclosure actions filed in federal court").

Further, the Plaintiff asserts, and DLJ Equities does not materially deny, that during their initial conference before United States Magistrate Judge Gary R. Brown on January 21, 2016, counsel for the parties did, in fact, engage in substantive, court-supervised settlement discussions.  Thus, even if CPLR § 3408 applied in this federal action, the Court would find that, under the circumstances, its requirements were satisfied.  *See O'Sullivan*, 2016 U.S. Dist. LEXIS 61787, at *30-*31 (finding that pre-trial settlement negotiations before a federal magistrate "clearly satisfied" the requirements of CPLR § 3408).

Accordingly, the Court finds that DLJ Equities has not established an affirmative defense based on the Plaintiff's failure to comply with the settlement conference requirement of CPLR § 3408.

### v.   CPLR § 3012-b

DLJ Equities further argues that the Plaintiff failed to establish its compliance with CPLR § 3012-b, which, in any residential mortgage foreclosure action, requires the complaint to be "accompanied by" a Certificate of Merit setting forth certain statutorily-required information.

However, the Plaintiff filed the Certificate of Merit on the public docket in this case, and submitted an affidavit of service demonstrating that this document was served on the Defendants at the same time as the summons and complaint. DLJ Equities has raised no genuine issue as to the accuracy or authenticity of these documents.

Accordingly, the Court finds that DLJ Equities has not established an affirmative defense based on the Plaintiff's failure to comply with CPLR § 3012-b sufficient to defeat summary judgment.

### vi.   RPAPL § 1303

Finally, DLJ Equities argues that the Plaintiff failed to establish its compliance with RPAPL § 1303, which, at the time the summons and complaint are served, requires service on the mortgagor and any tenants of the mortgaged premises of a notice entitled "Help for Homeowners in Foreclosure" (previously defined as "§ 1303 Notice").

In particular, DLJ Equities claims that the Plaintiff failed to produce evidence that it duly served § 1303 Notices on Crystal Hayes and David Felton, sued here as John Doe "1" and John Doe "2," who, as noted above, are apparently tenants of the Middle Island Residence.

However, the Plaintiff submitted an affidavit of service indicating that both of these individuals were served with the pleadings and Certificate of Merit on December 5, 2015. A second affidavit of mailing indicates that, two days later on December 7, 2015, both individuals were served with § 1303 Notices by first-class mail and certified mail.

As discussed above, these affidavits enjoy a presumption of regularity that DLJ Equities has offered no evidence of its own to rebut. Accordingly, the Court finds that DLJ Equities has not established an affirmative defense based on the Plaintiff's failure to comply with RPAPL § 1303 sufficient to defeat summary judgment.

### vii. The Remaining Affirmative Defenses

In addition to the affirmative defenses specifically discussed above, in its answer to the complaint, DLJ Equities asserted five other alleged defenses that were not addressed in its opposition papers or cross-motion – this despite the fact that the Plaintiff set forth individualized arguments favoring dismissal of each. Under these circumstances, the Court finds that DLJ Equities has abandoned its remaining affirmative defenses, none of which is supported by evidence sufficient to defeat the Plaintiff's motion for summary judgment in any event. *See Opoku v. Town of Southampton*, No. 13-cv-0940, 2016 U.S. Dist. LEXIS 143626, at *19 (E.D.N.Y. Oct. 17, 2016) (Spatt, J.) (deeming certain claims to have been abandoned where the plaintiff failed to respond to arguments seeking their dismissal); *accord Sanders v. City of New York*, No. 12-cv-13, 2015 U.S. Dist. LEXIS 42698, at *65-*66 (E.D.N.Y. Oct. 17, 2016) (Report and Recommendation), *adopted*, 2015 U.S. Dist. LEXIS 40972 (E.D.N.Y. Mar. 30, 2015).

Based on the foregoing, the Court finds that the Plaintiff has established its prima facie entitlement to foreclosure; that DLJ Equities has failed to establish a meritorious affirmative defense; and that, therefore, the Plaintiff's motion for summary judgment, dismissing the affirmative defenses of DLJ Equities is granted in its entirety.

### 4. The Cross-Motion for Summary Judgment by DLJ Equities

DLJ Equities relies on the same arguments to support its cross-motion for summary judgment as it made to defeat the Plaintiff's motion for similar relief. *See* DLJ Equities Reply Memo of Law at 1 (noting that it "filed a cross-motion for summary judgment because Plaintiff failed to

meet the conditions precedent to bring a foreclosure action," and setting forth the same grounds for relief as set forth above).

Thus, for substantially the same reasons outlined above, the Court finds that DLJ Equities' arguments favoring summary judgment are insufficient to warrant the relief sought. Accordingly, the cross-motion by DLJ Equities for summary judgment dismissing the complaint is denied in its entirety.

**B.    The Plaintiff's Motion for Default Judgments Against the Non-Appearing Defendants**

As noted above, the Plaintiff also moves under Fed. R. Civ. P. 55 for entry of default judgments against the non-appearing parties, each of whom has neither responded to this motion nor otherwise appeared in this action.

"Courts regularly enter default judgment in foreclosure actions against defendants with 'nominal interests' in the relevant property, such as parties holding liens that are subordinate to the plaintiff's interest." *Nationstar Mort. LLC v. Garcia*, No. 15-cv-1854, 2015 U.S. Dist. LEXIS 176801, at *8-*9 (E.D.N.Y. Oct. 19, 2015) (Report and Recommendation), *adopted*, 2016 U.S. Dist. LEXIS 30307 (E.D.N.Y. Mar. 9, 2016) (Spatt, J.) (citations omitted). "When a default judgment is entered against a defendant with a 'nominal interest' in a property, that defendant's interest in the relevant property is terminated." *Id.* at *9 (citing *Bright*, 2012 U.S. Dist. LEXIS 93082, at *3-*4; *Bank of Am., N.A. v. 3301 Atl. Ave. LLC*, No. 10-cv-2504, 2012 U.S. Dist. LEXIS 90928, at *47-*48 (E.D.N.Y. June 29, 2012)).

In this case, the record reveals that the Homeowners Association, Tolson, and the NYDTF were properly served with the summons and complaint on December 1, 2015; the District Court Clerk was served with process on December 2, 2015; and Crystal Hayes and David Felton were served with process on December 5, 2015.

However, with the exception of the Homeowners Association, all of these parties failed to answer or otherwise respond. As noted above, although counsel for the Homeowners Association

filed a Notice of Appearance, to date, it has not answered the complaint; sought to vacate the Clerk's entry of default; or otherwise participated in this action.

The Clerk of the Court noted these Defendants' default on January 13, 2016.

Under Fed. R. Civ. P. 55(b), following the Clerk's issuance of a default notice, the district court has discretion to enter a default judgment against a non-appearing party. In that regard, the Second Circuit has provided three guiding factors to be considered in determining whether such relief is warranted: (1) whether the default was willful; (2) whether the Defendant has a meritorious defense; and (3) whether the Plaintiff will suffer prejudice if the motion for a default judgment is denied. *See United States CFTC v. McCrudden*, No. 10-cv-5567, 2015 U.S. Dist. LEXIS 139257, at *3-*4 (E.D.N.Y. Oct. 13, 2015) (citing *Mason Tenders Dist. Council v. Duce Const. Corp.*, No. 02-cv-9044, 2003 U.S. Dist. LEXIS 6881, at *5 (S.D.N.Y. Apr. 28, 2003)).

Applying this standard, the Court finds that judgments of default should be entered against the non-appearing parties. First, in this District, " '[w]hen a defendant is continually and entirely unresponsive,' [the] defendant's failure to respond is considered willful." *Fed. Ins. Co. v. CAC of NY, Inc.*, No. 14-cv-4132, 2015 U.S. Dist. LEXIS 32098, at *13 (E.D.N.Y. Feb. 5, 2015) (Report and Recommendation), *adopted*, 2015 U.S. Dist. LEXIS 31923 (E.D.N.Y. Mar. 16, 2015) (quoting *Ferrara v. PFJ Trucking, LLC*, No. 13-cv-7191, 2014 U.S. Dist. LEXIS 134095, at *12 (E.D.N.Y. Aug. 14, 2014) (Report and Recommendation), *adopted*, 2014 U.S. Dist. LEXIS 133723 (E.D.N.Y. Sept. 22, 2014)). In the Court's view, the total failure of the non-appearing parties to participate in this action, despite receiving ample notice, is considered willful.

Second, due to these Defendants' non-appearance, the Court is unable to determine whether they have meritorious defenses to any of the Plaintiff's allegations.

Third, the Court finds that denying the motion for a default judgment would prejudice the Plaintiff in this case "because there is no other method by which it can obtain relief from the Court."

*Fed. Ins. Co.*, 2015 U.S. Dist. LEXIS 32098, at *14-*15 (citing *Trustees v. JREM Const. Corp.*, No. 12-cv-3877, 2013 U.S. Dist. LEXIS 23962, at *12 (E.D.N.Y. Jan. 19, 2013) (Report and Recommendation) (holding that the plaintiff would be prejudiced by a denial of the motion for a default judgment because "there [were] no additional steps available to secure relief in this Court"), *adopted*, 2013 U.S. Dist. LEXIS 22321 (E.D.N.Y. Feb. 12, 2013)).

Accordingly, the Court grants the Plaintiff's motion pursuant to Fed. R. Civ. P. 55 for the entry of a default judgment against the Defendants Tolson; the Homeowners Association; the NYDTF; the District Court Clerk; Crystal Hayes; and David Felton.

### III.    CONCLUSION

Based on the foregoing, the Court grants summary judgment in favor of the Plaintiff West Coast 2014-7, LLC and dismisses with prejudice the affirmative defenses of the Defendant DLJ Equities, LLC.

Further, the Court grants the Bank's motion for default judgments against the Defendants Donald Tolson, also known as Donald P. Tolson; the Board of Directors of Coventry Manor Townhouses Homeowners Association; the New York State Department of Taxation and Finance; the Clerk of the Suffolk County District Court; Crystal Hayes, sued here as John Doe "1"; and David Felton, sued here as John Doe "2.".

Finally, the Court denies the cross-motion by DLJ Equities, LLC for summary judgment in its favor.

Within 20 days of the date of this Order, the Plaintiff shall submit, on notice to all named parties, a proposed judgment of foreclosure and sale consistent with this opinion.

It is **SO ORDERED:**

Dated:  Central Islip, New York
        August 7, 2017

                                        /s/ Arthur D. Spatt
                                        ARTHUR D. SPATT
                                        United States District Judge